UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

FREEDOM MORTGAGE CORP.,

                              Plaintiff,

v.                                                           1:11-CV-1357
                                                             (GTS/DRH)

PLATINUM HOME MORTGAGE CORP.; WILLIAM
GIAMBRONE; LEE GROSS; JANE KING; MICHAEL
YOUNG; KARLA KELLY; KIMBERLY CURTIN;
WENDY DICKSON; LYNN SPANY; TERESA
SHADICK; SHARON JONES-OTTO, and MICHAEL
LINSNER,

                              Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

LITTLER MENDELSON, P.C.                         ERIC A. SAVAGE, ESQ.
  Counsel for Plaintiff                         SARAH E. MOSS, ESQ.
900 Third Avenue
New York, NY 10022

SHEPPARD MULLIN RICHTER & HAMPTON, LLP          JONATHON H. STOLER, ESQ.
  Counsel for Defendants                        ROBERT S. FRIEDMAN, ESQ.
30 Rockefeller Plaza, 39th Floor
New York, NY 10112-0002

GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

Currently before the Court, in this business tort action filed by Freedom Mortgage

Corporation ("Plaintiff") against the above-captioned corporation and eleven individuals, is a

motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) filed by

William Giambrone ("Defendant").  (Dkt. No. 28, Attach. 4.)  For the reasons set forth below,

Defendant's motion is denied without prejudice, with leave to renew after discovery is

completed.

## I.     RELEVANT BACKGROUND

### A.     Plaintiff's Claims Against Defendant

Generally, liberally construed, Plaintiff's Amended Complaint asserts the following six claims against Defendant: (1) a claim that Defendant violated Plaintiff's contractual rights by aiding and abetting eight of Plaintiff's former employees in their breach of their confidentiality agreements; (2) a claim that Defendant violated Plaintiff's rights under the Illinois Trade Secrets Act by coordinating the misappropriation of Plaintiff's trade secrets in order to solicit business away from Plaintiff; (3) a claim that Defendant violated Plaintiff's rights under 18 U.S.C. § 1030 by conspiring to commit fraud with Plaintiff's former employees; (4) a claim that Defendant violated Plaintiff's property rights under New York State common law by encouraging and assisting Plaintiff's former employees to forego returning Plaintiff's wrongfully obtained trade secrets, and thus commit the tort of conversion; (5) a claim that Defendant violated Plaintiff's rights under New York State common law by interfering with Plaintiff's business advantage; and (6) a claim that Defendant violated Plaintiff's property rights by unjustly enriching himself at Plaintiff's expense.  (*See generally* Dkt. No. 26, at ¶¶ 55-130 [Plf.'s Amend. Compl.].)

Generally, these six claims are based on the following allegations: (1) Plaintiff and Platinum Home Mortgage Corporation ("Platinum") are both mortgage lenders, Plaintiff being based in Clifton Park, New York, and Defendant being based in Illinois; (2) on or before May 1, 2011, Defendant, as president of Platinum, traveled to New York City for the National Mortgage Bankers Association Secondary Market Conference and Expo at the Marriott Marquis Hotel on Broadway; (3) while attending the conference over the course of the next three days, Defendant, Lee Gross, and another Platinum employee met at the Marriott with Jane King and another

employee of Plaintiff for the purpose of discussing their leaving Plaintiff and bringing to

Platinum one of Plaintiff's entire loan programs ("the Section 203(k) business"), in violation of

confidentiality agreements executed between those employees and Plaintiff; and (4) during the

following five months, Defendant and other Platinum employees successfully persuaded

numerous employees to leave Plaintiff, join Platinum, and bring to Platinum Plaintiff's Section

203(k) business, in violation of those confidentiality agreements.  (*Id*. at ¶¶ 1-54.)

Familiarity with Plaintiff's precise claims against Defendant, and the precise factual

allegations supporting those claims, is assumed in this Decision and Order, which is intended

primarily for review by the parties.  (*Id*.)

### B.    Parties' Briefing on Defendant's Motion

Generally, in support of his motion to dismiss, Defendant argues that all of Plaintiff's

claims against Defendant should be dismissed under Fed. R. Civ. P. 12(b)(2), because Plaintiff's

Amended Complaint has failed to allege facts plausibly suggesting that the Defendant–a non-

resident of New York who has no real estate, bank account or offices in New York–had

sufficient contacts with New York State under New York's Civil Practice Law and Rules ("NY

CPLR") §§ 301 and 302(a) and the Due Process Clause to confer on the Court personal

jurisdiction over him.  (*See generally* Dkt. No. 28, Attach. 4 [Def's. Memo. of Law].)

Generally, in Plaintiff's response to Defendant's motion, asserts the following three

arguments: (1) based on the allegations contained in Plaintiff's Amended Complaint, and the

sworn assertions contained in declarations presented by the parties (including the declaration of

Sue Mintzer, who was present at the meeting at the Marriott in early-May 2011, as well as two

declarations of Defendant himself), Defendant transacted business within New York State for

purposes of NY CPLR § 302(a)(1), because during the meeting Defendant attempted to convince

Plaintiff's employees to breach their confidentiality agreements with Plaintiff, violate their duties

of loyalty owed to Plaintiff, and misappropriate Plaintiff's trade secrets in order to unjustly

enrich Platinum;[1] (2) in any event, based on the allegations contained in Plaintiff's Amended

Complaint, and the sworn assertions contained in declarations presented by the parties,

Defendant committed a tort within New York State for purposes of NY CPLR § 302(a)(2); and

(3) under the circumstances, exercising personal jurisdiction over Defendant comports with the

Due Process Clause.  (*See generally* Dkt. No. 16 [Plf.'s Opp'n Memo. of Law].)

Generally in his reply, Defendant asserts the following four arguments: (1) Plaintiff cites

the incorrect standard of review in its opposition memorandum of law, citing the standard

governing a motion filed pursuant to Fed. R. Civ. 12(b)(6), rather than a motion filed pursuant to

Fed. R. Civ. P. 12(b)(2); (2) Plaintiff fails to allege facts plausibly suggesting, and/or adduce

evidence establishing, that Defendant transacted business within New York State for purposes of

NY CPLR § 302(a)(1), through the single, 30-45 minute meeting in question, the purpose of

which has not been established;[2] (3) Plaintiff fails to allege facts plausibly suggesting, and/or

adduce evidence establishing, that Defendant committed a tort within New York State for

purposes of NY CPLR § 302(a)(2); and (4) Plaintiff fails to allege facts plausibly suggesting,

---

[1]      Plaintiff also argues that Platinum's acts in New York State can be imputed to
Defendant, who was Platinum's president at the time.  (Dkt. No. 34, at 11 [attaching page "7" of
Plf.'s Opp'n Memo. of Law].)

[2]      In response to the imputation argument described in note 1 of this Decision and
Order, Defendant argues that such imputation can occur only when the plaintiff shows that the
corporation was acting as the agent for the defendant, which Plaintiff has not done in this action.
(Dkt. No. 36, at 6-7 [attaching pages "5" and "6" of Def.'s Reply Memo. of Law].)

4

and/or adduce evidence establishing, that exercising personal jurisdiction over Defendant comports with the Due Process Clause.  (*See generally* Dkt. No. 36 [Def.'s Reply Memo. of Law].)

## II.    RELEVANT LEGAL STANDARD

"When a defendant moves to dismiss a complaint under Rule 12(b)(2) for want of personal jurisdiction, courts must perform a two-part analysis." *Harris v. Ware*, 04-CV-1120, 2005 WL 503935, at *1 (E.D.N.Y. Mar. 4, 2005).  "First, personal jurisdiction over a defendant must be established under the law of the state where the federal court sits." *Harris*, 2005 WL 503935, at *1 (*citing Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 [2d Cir.1999]).  "Under Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure, the service of a summons establishes personal jurisdiction over a defendant 'who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located.'" *Id*. (citation omitted).  "Second, if jurisdiction is established under the governing statute, courts must determine whether the exercise of jurisdiction under the relevant state law would violate the defendant's due process rights." *Id*. (citation omitted)

The plaintiff "bears the burden of establishing that the court has jurisdiction over the defendant, since Defendant has served the Rule 12(b)(2) motion." *Aldinger v. Segler*, 04-CV-4405, 2005 WL 2591958, at *2 (S.D.N.Y. Oct. 13, 2005) (internal quotation marks and citation omitted).  Unless a court conducts "a full-blown evidentiary hearing," the plaintiff only needs to make "a prima facie showing of jurisdiction through its own affidavits and supporting materials to survive a motion to dismiss under Rule 12(b)(2)." *Harris*, 2005 WL 503935, at *1 (internal quotation marks and citations omitted).  "In other words, prior to discovery, a plaintiff may

defeat a jurisdiction-testing motion by pleading in good faith, ... legally sufficient allegations of jurisdiction." *Harris*, 2005 WL 503935, at *1 (internal quotation marks and citations omitted). However, "[o]nce discovery regarding a defendant's contacts with the forum is conducted," the plaintiff's burden is heightened, with the requirement that the "prima facie showing ... include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Id*. (internal quotation marks and citations omitted).

"If the plaintiff fails to make the requisite showing, [the Court] may dismiss the complaint pursuant to Rule 12(b)(2)." *Id*.  In the alternative, the Court may "transfer venue[,] even it if lacks personal jurisdiction over defendants, if the requirements of the governing statute, 28 U.S.C. § 1404(a), are met." *Id*. (internal quotation marks and citations omitted).  "When evaluating the parties' submissions, the Court will read the Complaint and submissions in the light most favorable to Plaintiff." *Daou v. Early Advantage, LLC*, 410 F.Supp.2d 82, 88–89 (N.D.N.Y.2006) (Scullin, J.) (citations omitted).

## III.   ANALYSIS

### A.   Whether Defendant Transacted Business Within New York State for Purposes of NY CPLR § 302(a)(1)

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Plaintiff's opposition memorandum of law.  (Dkt. No. 34, at 9-13 [attaching pages "5" through "9" of Plf.'s Opp'n Memo. of Law].)  The Court would only add only two brief points.

First, Defendant understates the significance of the early-May meeting in the Marriott. For example, based on the factual allegations asserted and evidence adduced thus far, the purpose of the meeting was to persuade employees of Plaintiff to breach their confidentiality

agreements with Plaintiff, violate their duty of loyalty owed to Plaintiff, and misappropriate Plaintiff's trade secrets.[3]  Moreover, during that 30- to 45-minute meeting, Defendant successfully encouraged a ninth employee of Plaintiff–Sue Mintzer–to breach her confidentiality agreement with Plaintiff, violate her duty of loyalty owed to Plaintiff, and misappropriate Plaintiff's trade secrets by emailing him Plaintiff's confidential pricing sheets.[4]

Second, regarding Plaintiff's imputation argument (referenced above in notes 1 and 2 of this Decision and Order), the Court finds that Platinum's acts in New York State include the following: (1) causing a classified ad to be published in the *Albany Times Union* on or about July 10, 2011, in order to create a ruse that Platinum did not poach Plaintiff's employees; and (2) through two of its high-level employees, (a) meeting with at least four of Plaintiff's employees in New York State on May 22 and 23, 2011, (b) sending an email message to one of Plaintiff's employees in New York State on June 7, 2011, (c) purchasing three airline tickets for flights from New York State on or before June 19 and 20, 2011, and (d) encouraging two of Plaintiff's employees to surreptitiously take from Plaintiff and transfer to Platinum commercial and proprietary data on or before May 12, 2011, July 15, 2011, and early-October 2011, in New York State.[5]  In addition, during the time in question, Defendant was president of Platinum.[6]

---

[3]     (Dkt. No. 1, at ¶¶ 33-34 [Plf.'s Am. Compl.]; Dkt. No. 34, Attach. 1, at 4-5 [attaching ¶¶ 2-6 of Mintzer Decl.]; Dkt. No. 34, Attach. 1, at 10 [attaching ¶ 7 of First Giambrone Decl.].)

[4]     (*Id*.)

[5]     (Dkt. No. 1, at ¶¶ 7, 8, 35, 36, 38-42.)

[6]     (Dkt. No. 1, at ¶ 6 [Plf.'s Am. Compl.]; Dkt. No. 34, Attach. 1, at 4 [attaching ¶ 3 of Mintzer Decl.]; Dkt. No. 34, Attach. 1, at 9 [attaching ¶ 1 of First Giambrone Decl.]; Dkt. No. 34, Attach. 1, at 12 [attaching ¶ 1 of Second Giambrone Decl.].)

Under the circumstances, the conclusion that Platinum was acting as the agent of Defendant is entirely plausible (if not inescapable), especially given that (1) all of the above-described events were preceded by the early-May meeting in the Marriott, at which Defendant–in the presence of one of the two above-referenced high-ranking employees of Platinum–encouraged Sue Mintzer to email him Plaintiff's confidential pricing sheets, and (2) Defendant–again, in the presence of the two above-described high-ranking employees of Platinum–met with three of Plaintiff's employees in Platinum's headquarters on June 20, 2011, to discuss moving from Plaintiff to Platinum.[7]

For all of these reasons, the Court finds that, based on the factual allegations asserted and evidence adduced thus far, Defendant transacted business within New York State for purposes of NY CPLR § 302(a)(1). However, because the Court's finding is based on the above-described factual allegations and preliminary evidence, the Court denies this part of Defendant's motion only without prejudice, with leave to renew after discovery is completed.

**B.      Whether, in the Alternative, Defendant Committed a Tortious Act Within New York State for Purposes of NY CPLR § 302(a)(2)**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Plaintiff's opposition memorandum of law. (Dkt. No. 34, at 9-13 [attaching pages "5" through "9" of Plf.'s Opp'n Memo. of Law].) The Court would add only two brief points.

---

[7]      (Dkt. No. 1, at ¶¶ 33-34 [Plf.'s Am. Compl.]; Dkt. No. 34, Attach. 1, at 4-5 [attaching ¶¶ 2-6 and 8 of Mintzer Decl.]; Dkt. No. 34, Attach. 1, at 10 [attaching ¶ 7 of First Giambrone Decl.].)

First, based on the factual allegations asserted and evidence adduced thus far, the Court finds that, setting aside several torts initiated by Defendant during the meeting in early-May 2011 in the Marriott in New York and consummated later, the following two torts were initiated and completed by Defendant during that meeting: (1) aiding and abetting Sue Mintzer's breach of fiduciary duty by encouraging her, through the prospect of employment with Platinum, to email him Plaintiff's confidential pricing sheets during the meeting;[8] and (2) misappropriation of trade secrets, through receiving the pricing sheets from Ms. Mintzer during the meeting, and using them evaluate the profitability of Plaintiff's Section 203K loan product (toward the end of further encouraging Ms. Mintzer, and others, to harm Plaintiff to Platinum's benefit).[9]  The Court finds that the causes of action asserted against Defendant (described above in Part I.A. of this Decision and Order) sufficiently "aris[e]" from the above-described two torts, for purposes of NY CPLR § 302(a)(2), especially given that Platinum's senior vice president (who subsequently followed Defendant's lead in soliciting Plaintiff's employees) and Jane King (who eventually left Plaintiff's employment) were present at the time.

Second, even if the Court were not to find that Defendant *personally* committed a tortious act within New York State during the meeting in early-May 2011 in the Marriott in New York,

---

[8]     The elements of a claim for aiding and abetting a breach of fiduciary duty in New York are "(1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damages as a result of the breach." *Kaufman v. Cohen*, 760 N.Y.2d 157, 169 (N.Y. App. Div., 1st Dep't 2003).

[9]     "The elements of a cause of action for misappropriation of trade secrets are that 1) plaintiff possesses a trade secret and 2) defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." *DoubleClick Inc. v. Henderson*, No. 116914/97, 1997 WL 731413, at *3 (N.Y. Sup. Ct., New York Cnty. Nov. 7, 1997).

the Court would find, based on the factual allegations asserted and evidence adduced thus far, that he subsequently committed tortious acts in New York State *through an agent*–namely, Platinum–for the reasons stated above in Part III.A. of this Decision and Order.

For these reasons, the Court alternatively finds that, based on the factual allegations asserted and evidence adduced thus far, Defendant committed a tortious act within New York State for purposes of NY CPLR § 302(a)(2).  However, again, because the Court's finding is based on the above-described factual allegations and preliminary evidence, the Court denies this part of Defendant's motion only without prejudice, with leave to renew after discovery is completed.

### C.      Whether Exercising Personal Jurisdiction over Defendant Comports with the Due Process Clause

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Plaintiff's opposition memorandum of law.  (Dkt. No. 34, at 13-14 [attaching pages "9" and "10" of Plf.'s Opp'n Memo. of Law].)  The Court would add only the following two brief points.

First, the Court's finding with regard to this issue is based also on the points made above in Parts III.A. and III.B. of this Decision and Order, and the fact that Defendant has not, in his two declarations, sufficiently countered the factual allegations asserted, and declaration adduced, by Plaintiff.

Second, again, because the Court's finding is based on the above-described factual allegations and preliminary evidence, the Court denies this part of Defendant's motion only without prejudice, with leave to renew after discovery is completed.

**ACCORDINGLY,** it is

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 28) is **<u>DENIED</u> without**

**prejudice**, with leave to renew after discovery is completed.

Dated: September 12, 2012
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

11