UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

FREEDOM HOME MORTGAGE CORP.,

                              Plaintiff,

v.                                                Civil Case No. 1:11-CV-1357 (GTS/CFH)

PLATINUM HOME MORTG. CORP.;
WILLIAM GIAMBRONE; LEE GROSS;
JANE KING; and MICHAEL YOUNG,

                              Defendants.
_____

APPEARANCES:                                OF COUNSEL:

LITTLER MENDELSON P.C.                       ERIC A. SAVAGE, ESQ.
  Counsel for Plaintiff                      SARAH E. MOSS, ESQ.
900 Third Avenue
New York, New York 10022

SHEPPARD, MULLIN, RICHTER &                  JONATHAN H. STOLER, ESQ.
HAMPTON LLP                                  KEVIN J. SMITH, ESQ.
  Counsel for Defendants                     ROBERT S. FRIEDMAN, ESQ.
30 Rockefeller Plaza, 39th Floor             TYLER E. BAKER, ESQ.
New York, New York 10112-0002

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this breach-of-contract action filed by Freedom Mortgage
Corporation ("Plaintiff") against Platinum Home Mortgage Corporation, William Giambrone,
Lee Gross, Jane King and Michael Young ("Defendants"), are Defendants' motion for summary
judgment with regard to the seven claims in Plaintiff's Amended Complaint (Dkt. No. 129), and
Plaintiffs' motion for summary judgment with regard to the five counterclaims in Defendant
King's Amended Answer (Dkt. No. 128). For the reasons set forth below, both motions are
granted in part and denied in part.

## I.     RELEVANT BACKGROUND

### A.     Plaintiff's Claims

Generally, in its Amended Complaint, Plaintiff alleges that, between May of 2011 and February of 2012, Platinum and three of its officers (Defendant Giambrone, Defendant Gross and Michael Linsner) raided eight of Plaintiff's employees (Defendant King, Defendant Young, Karla Kelly, Kimberly Curtin, Wendy Dickson, Lynn Spany, Teresa Shadick and Sharon Jones-Otto), who were involved in a specialized type of mortgage lending known as "Section 203(k)" mortgages (which are intended for purchasers seeking to buy a home in need of rehabilitation), and diverted business from Plaintiff to Platinum.  (Dkt. No. 26 [Plf.'s Am. Compl.].)

Generally, based on these allegations, Plaintiff asserts seven claims against Defendants: (1) a claim breach of contract (i.e., a Confidentiality Agreement) against Defendants King and Young; (2) a claim for aiding and abetting that breach of contract against Defendants Platinum, Giambrone and Gross; (3) a claim of misappropriation of trade secrets against Defendants Platinum, King and Young; (4) a claim of breach of fiduciary duties and duty of loyalty against Defendants King and Young; (5) a claim of conversion against Defendants King and Young; (6) a claim of tortious interference with business advantage against Defendants Platinum, King and Young; and (7) a claim of unjust enrichment against Defendants Platinum, King and Young. (*Id.*.)

Familiarity with the particular nature of these claims and the factual allegations supporting them is assumed in this Decision and Order, which is intended primarily for the review of the parties.

## B.    Defendant King's Counterclaims

Generally, in Defendants' Amended Answer to Plaintiff's Amended Complaint, Defendant King alleges that Plaintiff breached its obligations under its employment agreement with Plaintiff (entered into on or about August 30, 2006), which incorporated the terms of Plaintiff's prior employment agreement with a corporation acquired by Plaintiff in 2006 (Irwin Mortgage Corporation).  (Dkt. No. 66.)

Generally, based on these allegations, Defendant King asserts five counterclaims against Plaintiff: (1) a claim for breach of contract (i.e., the Freedom Employment Agreement with King) due to a failure to pay Defendant King her earned annual commissions amounting to no less than $500,000; (2) a claim for a violation of Article 6 of the New York Labor Law based on a failure to pay Defendant King wages (in the form of commissions); (3) a claim for an accounting as to Plaintiff's profits and losses during Defendant King's employment with Plaintiff; (4) a claim of unjust enrichment due to Plaintiff's retention of the commissions that are due to Defendant King; and (5) a claim of quantum meruit for the commissions owed to Defendant King due to her services.  (*Id.*)

Familiarity with the particular nature of these counterclaims and the factual allegations supporting them is assumed in this Decision and Order, which (again) is intended primarily for the review of the parties.

## C.    Relevant Procedural History

On June 17, 2014, the Court issued an Order approved the parties' stipulation dismissing with prejudice Plaintiff's claims against Linsner, Kelly, Curtin, Dickson, Spany, Shadick and Jones-Otto.  (Dkt. No. 127.)

On July 7, 2014, both sides filed their motions for summary judgment. (Dkt. Nos. 128, 129.) On July 28, 2014, briefing was completed on the parties' motions. (Dkt. Nos. 132, 133, 139, 140.) On March 11, 2014, oral argument on both motions was heard. (Oral Argument Tr.)

## II.    GOVERNING LEGAL STANDARD

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the moving party has met this initial responsibility, the nonmoving party must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a),(c),(e).

A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the novmoving party." *Anderson*, 477 U.S. at 248. As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]. As the Supreme Court has famously explained, "[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts" [citations omitted]. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

4

As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* [citation omitted].

## III.    ANALYSIS

### A.    Plaintiff's Claim for Breach of Contract Against King and Young

Generally, Defendants argue that this claim should be dismissed for four reasons. (Dkt. No. 129, Attach. 21; Oral Argument Tr.) First, argue Defendants, King and Young did not disclose confidential material because (a) Plaintiff has no trade secrets and the list of its customers is public information (e.g., being available on a U.S. Department of Housing and Urban Development database), and (b) in any event, there is no evidence (only speculation) that King and Young disclosed (or even took) that material. (*Id.*) Second, argue Defendants, King and Young did not solicit Plaintiff's customers because (a) this part of the Confidentiality Agreements is unenforceable as ambiguous (due to the term "customers, business or patrons") and unreasonable (due to the lack of time restriction placed on the prohibition), and (b) in any event, under New Jersey law, solicitation requires initiation of contact, and there is no evidence (only speculation) that King and Young initiated contact with any of Plaintiff's customers. (*Id.*) Third, argue Defendants, King and Young similarly did not solicit Plaintiff's *employees* because (a) again, solicitation requires initiation of contact, and (b) there is no evidence that King or Young initiated such contact. (*Id.*) Fourth, argue Defendants, there is no admissible evidence that, as a result of Defendants' conduct, Plaintiff either lost existing customers or lost any of the business of the customers that it shared with Platinum (the "overlap" customers). (*Id.*)[1]

---

[1]    Defendants make this fourth argument with regard to all of the claims it challenges.

Generally, Plaintiff responds that this claim should not be dismissed for four reasons. (Dkt. No. 132, Attach. 1; Oral Argument Tr.)  First, argues Plaintiff, setting aside trade secrets, King and Young disclosed confidential material because (a) the material was not publicly known and Plaintiff made efforts to protect it against disclosure (Acree Decl. at ¶ 4; Plf.'s Additional Facts at ¶¶ 12-13), (b) there is evidence that they took and/or disclosed that material,[2] and (c) in the alternative, King and Young must have disclosed the material (for purposes of the inevitable-disclosure doctrine) because they could not service their former clients without using that material.  (Dkt. No. 132, Attach. 1; Oral Argument Tr.)  Second, argues Plaintiff, King and Young solicited Plaintiff's customers because (a) the Confidentiality Agreements are enforceable in that the meaning of the term "customers, business or patrons" is clear (and if not, it constitutes a question of fact) and the time restriction is stated as being "for a period of 18 months" (and even if not, it may be "blue penciled"), (b) there is admissible evidence that King and Young initiated contact with Plaintiff's correspondent lenders,[3] and (c) even if King and Young did not

---

[2]     For example, this evidence includes the following: (1) evidence that Plaintiff's operations manual disappeared from Young's office before his departure (Plf.'s Rule 7.1 Response at ¶¶ 138, 233); (2) evidence that Young's computer was nearly wiped clean before his departure (Plf.'s Rule 7.1 Response at ¶¶ 254-56, 260, 276); (3) evidence that King's and Young's customer lists in Excel spreadsheets disappeared before their departure (Plf.'s Additional Facts at ¶ 14, and Plf.'s Rule 7.1 Response at ¶¶ 254-56, 260, 276); (4) evidence that, after joining Platinum, King used Plaintiff's customized data in third-party software, called "Comergence," to send out invitations to come to Platinum (Plf.'s Additional Facts at ¶¶ 6 and 15); (5) evidence that Young emailed Plaintiff's vacation policy to Gross to help him make competitive offers (Plf.'s Additional Facts at ¶ 3); and (6) evidence that, on May 3, 2011, King discussed Plaintiff's pricing with Giambrone at a trade association conference in New York (Plf.'s Additional Facts at ¶ 2).

[3]     For example, this evidence includes evidence that, following King's sending out the above-referenced invitations, eight of Plaintiff's customers (the "overlap" customers) sent some of their business to her at Platinum, causing Plaintiff to lose more business than it otherwise would have (Plf.'s Additional Facts at ¶¶ 6-9).

initiate contact, they breached the restrictive covenant by accepting Plaintiff's customers as their own, which is all that is needed under New York law. (*Id.*) Third, argues Plaintiff, King and Young solicited Plaintiff's employees by encouraging them to leave Plaintiff for Platinum in breach of their confidentiality agreements.[4] (*Id.*) Fourth, argues Plaintiff, it has adduced admissible evidence that, as a result of Defendants' conduct, Plaintiff lost some of the new business of eight customers that it shared with Platinum (the "overlap" customers) (Plf.'s Additional Facts at ¶¶ 6-9). (Dkt. No. 132, Attach. 1; Oral Argument Tr.)

Generally, Defendants reply that Plaintiff's arguments should be rejected for three reasons. (Dkt. No. 140, Attach. 3; Oral Argument Tr.) First, argue Defendants, no confidential information was disclosed by Defendants, because (a) there is no evidence that they took or disclosed the material,[5] and (b) the "inevitable disclosure doctrine" applies only to motions for a

---

[4] For example, this evidence includes the following: (1) Patterson's testimony that either Curtin or Jones-Otto told her that King had said she wanted them to come with her to Platinum (Patterson's Depo. Tr. at 159); (2) Patterson's testimony that Curtin told her that (a) Young and King had called Curtin to ask why she "hadn't left yet" and (b) they had asked her to "come to Platinum with them to open up the new operation" (Patterson's Depo. Tr. at 161-62); (3) evidence that, in July of 2011, King and Young exchanged emails with Gross and each other discussing the terms of Shadick's and Dickson's prospective employment with Platinum (Plf.'s Additional Facts at ¶ 4); and (4) evidence that, on August 30, 2011, King sent an email to Gross and Giambrone stating "Everyone has been invited to come along except [Mintzer]" (Plf.'s Additional Facts at ¶ 5).

[5] More specifically, Defendants argue as follows: (1) Plaintiff's evidence regarding the operations manual and deleted computer information is the deposition testimony of Patterson and Kaffenberger, which is (a) contrary to Defendants' evidence (Defs.' Rule 7.1 Statement at ¶¶ 228, 238, 253) and (b) speculative and/or based on assumptions (e.g., Defs.' Rule 7.1 Statement at ¶ 229); (2) Plaintiff's evidence regarding the customer lists (a) is contradicted by the deposition testimony of Patterson, and (b) in any event ignores the non-confidential nature of the customer lists; (3) Plaintiff's customization of third-party software was not sufficiently unique or creative to be confidential (e.g., Defs.' Rule 7.1 Statement at ¶¶ 207, 243, 248); (4) Plaintiff's vacation-policy argument is late blossoming and in any event the policy is not protectable confidential information; and (5) Plaintiff has admitted that its pricing information is not confidential and is commonly exchanged amongst competitors in the industry (Defs.' Rule 7.1 Statement at ¶¶ 34-37, 106), and at the trade conference on May 3, 2011, King discussed only publicly available pricing information (Ex. L to Friedman Decl. at 235-236).

preliminary injunction, not motions for summary judgment. (*Id*.) Second, argue Defendants, King and Young did not solicit Plaintiff's customers, because (a) there is no admissible evidence that Young solicited Plaintiff's customers, (b) Plaintiff admits that King did not initiate contact with Plaintiff's customers (Plf.'s Rule 7.1 Response at ¶¶ 206-212), and relies on New York law, rather than the New Jersey law that governs the Confidentiality Agreement, and (c) Plaintiff fails to cite any evidence that King solicited customers (Plf.'s Rule 7.1 Response at ¶¶ 116-120, 160-161, 165). (Dkt. No. 140, Attach. 3; Oral Argument Tr.) Third, argue Defendants, King and Young did not solicit Plaintiff's employees, because (a) Plaintiff fails to cite admissible evidence to controvert Defendants' evidence that neither King nor Young solicited any of Plaintiff's employees (Plf.'s Rule 7.1 Response ¶¶ 156-159), and (b) indeed, Plaintiff admits "that the Freedom employees who left decided to move to Platinum without duress or coercion" (Plf.'s Rule 7.1 Response ¶ 158). (Dkt. No. 140, Attach. 3; Oral Argument Tr.)

After carefully considering the matter, the Court denies this portion of Defendants' motion for the reasons stated by Plaintiff in its papers and oral argument. To those reasons, the Court adds five points.

First, the Court finds that a "blue penciling" of the time restrictions on the covenants not to solicit is appropriate given (a) the structure of the paragraph in which the covenants appear, and (b) the reasonable duration of the time restriction.

Second, the Court is inclined to agree with Defendants regarding the inapplicability of the inevitable-disclosure doctrine. However, because the Court construes Plaintiff's reliance on that doctrine as an *alternative* argument for its disclosure claim, the Court's rejection of that doctrine does not change the Court's ruling.

Third, the Court is also inclined to agree with Defendants that there is a lack of evidence that (a) Young breached the covenant not to solicit customers and (b) Plaintiff's pricing information was confidential. However, given the evidence that he otherwise breached the Confidentiality Agreement, the Court will address these allegations at trial, through a motion to preclude and/or jury instruction.

Fourth, regardless of whether King *initiated* contact with Plaintiff's customers so as to "solicit" them, evidence exists that King "directly or indirectly . . . attempt[ed] to . . . divert or take away" Plaintiff's "customers, business or patrons," which is prohibited by the Confidentiality Agreements. For example, King testified in her deposition that she used Commergence as a way to have a "conversation" with a lender before it applied to Platinum.

Fifth, to a large extent, the Court is inclined to agree with the hearsay issue identified by Defendants regarding Patterson's deposition testimony. However, the Court finds that enough of that testimony appears to be admissible under Fed. R. Evid. 803(1) or (3) to create a genuine dispute of material fact, especially in light of King's email to Gross and Giambrone dated August 30, 2011.

**B.      Plaintiff's Claim for Aiding and Abetting a Breach of Contract Against Platinum, Giambrone and Gross**

Generally, Defendants argue that this claim should be dismissed for two reasons. (Dkt. No. 129, Attach. 21; Oral Argument Tr.) First, argue Defendants, to the extent either New York or Illinois law governs this claim, no such claim exists with regard to nonparties to a contract. (*Id.*)[6] Second, argue Defendants, to the extent New Jersey law governs this claim, there is no

---

[6]      Apparently Defendants invoke the possibility of Illinois law because Plaintiff's Amended Complaint alleges (on information and belief) that (1) Defendant Platinum is a corporation organized and existing under the laws of the State of Illinois and maintaining its principal place of business in the State of Illinois, (2) Defendants Giambrone and Linsner reside in Illinois, and (3) those three Defendants, along with Defendant Gross, coordinated illegal actions from Illinois by email and telephone. (Dkt. No. 26, at ¶¶ 5, 6, 8, 37, 76-80 [Plf.'s Am. Compl.].)

admissible evidence that Platinum, Giambrone or Gross knowingly and substantially participated in the breach. (*Id*.)

Generally, Plaintiff responds that this claim should not be dismissed for two reasons. (Dkt. No. 132, Attach. 1; Oral Argument Tr.) First, argues Plaintiff, New Jersey law governs this claim because Plaintiff suffered damages from Defendants' torts in New Jersey. (*Id*.) Second, argues Plaintiff, there is admissible evidence that Giambrone or Gross knowingly and substantially participated in the breach.[7] (*Id*.)

Generally, Defendants reply that Plaintiff's arguments should be rejected for three reasons. (Dkt. No. 140, Attach. 3; Oral Argument Tr.) First, argue Defendants, New York law applies. (*Id*.) Second, argue Defendants, Plaintiff admits that pricing information is not confidential. (*Id*.) Third, argue Defendants, Gross's request for information about King and Young's co-workers does not constitute substantial participation in a breach of contract, because the information was not confidential. (*Id*.)

After carefully considering the matter, the Court denies this portion of Defendants' motion for the reasons stated by Plaintiff in its papers and oral argument. To those reasons, the Court adds three points.

---

[7] For example, this evidence includes the following: (1) evidence that, during a trade conference in New York on May 3, 2011, Giambrone discussed "pricing" with King, which was confidential, and during the same meeting either Giambrone or Gross asked Mintzer to email him Plaintiff's pricing sheets (Plf.'s Additional Facts at ¶ 2); (2) evidence that, in early July 2011, Gross exchanged emails with King and Young requesting information about their co-workers at Plaintiff to assist Platinum in making competitive offers to them (Plf.'s Additional Facts at ¶ 4); and (3) evidence that, on August 28, 2011, Gross sent an email to Mintzer recognizing the "importance" of "th[e] group['s] loyal following" on whom they had previously "rel[ied] . . . to provide consistent business," and stating that the goal for Platinum, once the group has joined it, was "not to rely *solely* on this business" (Plf.'s Rule 7.1 Response at ¶ 137 [emphasis added]).

First, New Jersey law applies because (a) the claim, which is analogous to a claim of tortious interference with contract, is properly construed as arising in tort rather than contract, and (b) during the time in question Plaintiff was headquartered in New Jersey.

Second, the breach of contract in which Gross substantially participated by requesting information about King and Young's coworkers was not the breach of the covenant not to disclose confidential information but the covenant not to solicit Plaintiff's employees.

Third, the Court is inclined to agree with Defendants that there is a lack of evidence that Gross aided and abetted in the breach of the covenant not to disclose confidential information. However, given the evidence that he otherwise aided and abetted the breach of contract, the Court will address that allegation at trial, through a motion to preclude and/or jury instruction.

C.    **Plaintiff's Claim for Misappropriation of Trade Secrets Against Platinum, King and Young**

Generally, Defendants argue that this claim should be dismissed for two reasons. (Dkt. No. 129, Attach. 21; Oral Argument Tr.) First, argue Defendants, the information at issue did not consist of trade secrets, a fact admitted by Plaintiff. (*Id*.) Second, argue Defendants, in any event, there is no admissible record evidence that the information was misappropriated by Platinum, King or Young. (*Id*.)

Generally, Plaintiff responds that this claim should not be dismissed for two reasons. (Dkt. No. 132, Attach. 1; Oral Argument Tr.) First, argues Plaintiff, the following information was sufficiently secret to give Plaintiff a competitive advantage and protected from disclosure due to Plaintiff's password-protected computer system: (a) its operations manuals, (b) its policies and procedures, (c) its customer lists and data, (d) its pricing information, and (e) its customized third-party software inputs. (*Id*.) Second, argues Plaintiff, King and Young have disclosed that information to Platinum. (*Id*.)

Generally, Defendants reply that Plaintiff's arguments should be rejected for two reasons. (Dkt. No. 140, Attach. 3; Oral Argument Tr.) First, argue Defendants, Plaintiff does not identify its trade secrets with the requisite specificity. (*Id*.) Second, argue Defendants, the information is neither sufficiently secret to give Plaintiff a competitive advantage nor protected from disclosure, because (a) its operations manual was regularly shared with both customers and regulators, (b) its customer lists were widely known, and (c) its customized third-party software inputs have nothing to do with business generation. (*Id*.)

After carefully considering the matter, the Court grants this portion of Defendants' motion for the reasons stated by them in their papers and oral argument. To those reasons, the Court adds one point: Part IV of Plaintiff's opposition memorandum of law is conspicuously absent of citations to record evidence establishing that the five forms of information it describes is sufficiently secret to give Plaintiff a competitive advantage.

**D.      Plaintiff's Claim for Breach of Fiduciary Duties and Duty of Loyalty Against King and Young**

Generally, Defendants argue that this claim should be dismissed for three reasons. (Dkt. No. 129, Attach. 21; Oral Argument Tr.) First, argue Defendants, this claim is governed by New York law, under which (a) breach-of-fiduciary duty claims are barred if they are duplicative of breach-of-contract claims, (b) in any event, mere employees of a plaintiff are not fiduciaries of that plaintiff, and (c) in any event, their duties end when they leave the plaintiff's employ. (*Id*.) Second, argue Defendants, even if New Jersey law were to govern this claim, the claim is barred by the economic loss rule (which bars plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract). (*Id*.)

Generally, Plaintiff responds that this claim should not be dismissed for two reasons. (Dkt. No. 132, Attach. 1; Oral Argument Tr.)  First, argues Plaintiff, this claim is governed by New Jersey law, under which (a) breach-of-fiduciary duty claims are not barred if they are duplicative of breach-of-contract claims, (b) employees of a plaintiff are fiduciaries, and (c) their duties continue even after they leave a plaintiff's employ.  (*Id*.)  Second, argues Plaintiff, New Jersey's economic loss rule does not apply, because Defendants' conduct (soliciting an employer's customers and employees, and divulging confidential information) is unlawful under duty-of-loyalty principles independent of the dictates of the Confidentiality Agreements.  (*Id*.)

Generally, Defendants reply that Plaintiff's arguments should be rejected for two reasons. (Dkt. No. 140, Attach. 3; Oral Argument Tr.)  First, argue Defendants, Plaintiff is estopped from pursuing this claim because, in its own motion for summary judgment, Plaintiff argues that "Ms. King cannot prevail on her claim for equitable accounting because she lacks a fiduciary relationship with Freedom Mortgage."  (*Id*.)  Second, argue Defendants, Plaintiff is incorrect that the economic loss rule does not bar its breach-of-duty-of-loyalty claim, in light of *Capital Title & Abstract v. Pappas Bus.*, 646 F. Supp. 2d 668, 676-78 (D.N.J. 2009).  (Dkt. No. 129, Attach. 21; Oral Argument Tr.)

After carefully considering the matter, the Court grants this portion of Defendants' motion for the reasons stated by them in their papers and oral argument.  To those reasons, the Court adds two points.

First, even if this claim were governed by New Jersey law, it would be barred as duplicative of Plaintiff's breach-of-contract claim. Contrary to Plaintiff's argument, there appears to be New Jersey court precedent that this claim is duplicative.  *See, e.g., Saltiel v. GSI*

*Consultants, Inc.*, 788 A.2d 268, 280 (N.J. 2002); *Pfenninger v. Hunterdon Cent. Reg'l High Sch.*, 770 A.2d 1126, 1132 (N.J. 2001); *Spring Motors Distrib., Inc. v. Ford Motor Co.*, 489 A.2d 660, 672 (N.J. 1985); *Trecartin v. Mahony-Troast Const. Co.*, 87 A.2d 349, 354 (N.J. Super. App. 1952).

Second, in the alternative, the Court relies on the economic-loss rule referenced by Defendants.

### E.    Plaintiff's Claim for Conversion Against King and Young

Generally, Defendants argue that this claim should be dismissed for two reasons.  (Dkt. No. 129, Attach. 21; Oral Argument Tr.)  First, argue Defendants, this claim is governed by New York law, under which it is barred as duplicative of Plaintiff's breach-of-contract claim.  (*Id.*)  Second, argue Defendants, even if New Jersey law were to govern this claim, the claim would be barred by the economic loss rule (which bars plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract).  (*Id.*)

Generally, Plaintiff responds that this claim should not be dismissed for two reasons.  (Dkt. No. 132, Attach. 1; Oral Argument Tr.)  First, argues Plaintiff, this claim is not duplicative of its breach-of-contract claim, because this claim is based merely on "the unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights."  (*Id.*)  Second, argues Plaintiff, there is at lease a genuine dispute about whether King and Young took Plaintiff's operations manuals, policies and procedures, and customer lists, which they have not returned.  (*Id.*)

Generally, Defendants reply that Plaintiff's arguments should be rejected for two reasons. (Dkt. No. 140, Attach. 3; Oral Argument Tr.)  First, argue Defendants, Plaintiff cannot maintain its claim for conversion because the information in question was neither confidential nor a trade secret.  (*Id*.)  Second, argue Defendants, Plaintiff offers mere speculation as to whether any documents were actually missing or taken by King or Young.  (*Id*.)

After carefully considering the matter, the Court denies this portion of Defendants' motion for the reasons stated by Plaintiff in its papers and oral argument.  To those reasons, the Court adds three points.

First, the confidential nature of the property taken does not appear to be an element of the tort of conversion under the law of New York or New Jersey (e.g., the property may be merely proprietary or sensitive).

Second, with regard to whether Plaintiff offers more than speculation as to whether any documents were actually taken by King or Young, Defendants are reminded that circumstantial evidence–*from reasonable inferences drawn from facts*–may suffice to create a genuine dispute of material fact.

Third, here, there appears to be such circumstantial evidence: (1) evidence that Plaintiff's operations manual disappeared from Young's office before his departure (Plf.'s Rule 7.1 Response at ¶¶ 138, 233); (2) evidence that Young's computer was nearly wiped clean before his departure (Plf.'s Rule 7.1 Response at ¶¶ 254-56, 260, 276); (3) evidence that King's and Young's customer lists in Excel spreadsheets disappeared before their departure (Plf.'s Additional Facts at ¶ 14; Plf.'s Rule 7.1 Response at ¶¶ 254-56, 260, 276); and (4) evidence that, after joining Platinum, King used Plaintiff's customized data in third-party software, called "Comergence," to send out invitations to come to Platinum (Plf.'s Additional Facts at ¶¶ 6 and 15).

### F.     Plaintiff's Claim for Tortious Interference with Business Advantage Against Platinum, King and Young

Generally, Defendants argue that this claim should be dismissed for four reasons (Dkt. No. 129, Attach. 21; Oral Argument Tr.)  First, argue Defendants, based on a conflicts-of-law analysis, New Jersey law applies, under which the elements of this claim are (a) a reasonable expectation of an economic advantage (b) that was lost because of the defendant's malicious interference and (c) that caused the plaintiff to suffer damages.  (*Id*.)  Second, argue Defendants, the first element (reasonable expectation) is not met because there is no admissible evidence of a contractual or stable business relationship between Plaintiff and any of the customers it lost. (*Id*.)  Third, argue Defendants, the third element (causation) is not met because Bank of America's exit from the correspondent lending industry before or during the time in question caused unanticipated unpredictability in that industry so as to render unreasonable any probability that Plaintiff would have received its claimed expected economic advantage (and, certainly, there is no admissible evidence that Platinum caused any such loss).  (*Id*.)  Fourth, argue Defendants, in the alternative, to the extent this claim is asserted against King and Young, it is barred by New Jersey's economic loss rule, because it is duplicative of Plaintiff's breach-of-contract claim.  (*Id*.)

Generally, Plaintiff responds that this claim should not be dismissed for three reasons. (Dkt. No. 132, Attach. 1; Oral Argument Tr.)  First, argues Plaintiff, while New Jersey law applies and Defendants accurately recite the elements of the claim, here, the first element (reasonable expectation) is met because at least a genuine dispute exists regarding whether Plaintiff had reasonable expectation of (a) continuing to work with its existing customers and (b) continuing to employ its current employees.  (*Id*.)  Second, argues Plaintiff, the third element

(causation) is met because at least a genuine dispute exists regarding whether the poaching of employees exacerbated Plaintiff's post-Bank-of-America-exit loss of clients (i.e., as compared to Plaintiff's post-Bank-of-America-exit loss of clients unaccompanied by the poaching of employees). (*Id.*) Third, New Jersey's economic loss rule does not apply, because Defendants' conduct gives rise to an inference of business advantage independent of the dictates of the Confidentiality Agreements. (*Id.*)

Generally, Defendants reply that Plaintiff's arguments should be rejected for two reasons. (Dkt. No. 140, Attach. 3; Oral Argument Tr.) First, argue Defendants, Plaintiff admits that it has no contract with any correspondents guaranteeing or requiring the correspondents to do business solely with Plaintiff. (*Id.*) Second, argue Defendants, Plaintiff also admits that (a) it is not aware of any business lost to Platinum, (b) all of Plaintiff's allegedly lost business could have gone to mortgage companies other than Platinum, and (c) Bank of America's exodus from correspondent lending caused a total disruption to "business as usual" in the industry. (*Id.*)

After carefully considering the matter, the Court grants this portion of Defendants' motion for the reasons stated by them in their papers and oral argument. To those reasons, the Court adds three points.

First, generally, the Court is not persuaded by Defendants' arguments regarding the first and third elements of this claim.

Second, however, the Court agrees with Defendants that there is no evidence (only speculation) that Platinum *caused* Plaintiff's loss of a *reasonably expected* economic advantage.

Third, moreover, to the extent this claim is asserted against King and Young, the Court is persuaded by Defendants' argument regarding New Jersey's economic-loss rule.

### G.     Plaintiff's Claim for Unjust Enrichment Against Platinum, King and Young

Generally, Defendants argue that this claim should be dismissed for two reasons.  (Dkt. No. 129, Attach. 21; Oral Argument Tr.)  First, argue Defendants, regardless of the state law relied on, a claim for unjust enrichment has three elements: (a) the defendant was enriched (b) at the plaintiff's expense, and (c) it is against equity and good conscience to permit the defendant to retain what is sought to be recovered.  (*Id*.)  Second, argue Defendants, there is no admissible evidence that either equity or good conscience requires that Defendants make restitution to Plaintiff.  (*Id*.)

Generally, Plaintiff responds that this claim should not be dismissed for two reasons. (Dkt. No. 132, Attach. 1; Oral Argument Tr.)  First, argues Plaintiff, Defendants have improperly acquired Plaintiff's confidential material, business and employees.  (*Id*.)  Second, argues Plaintiff, it would be against equity and good conscience to permit them to retain these rewards. (*Id*.)

Generally, Defendants reply that Plaintiff's arguments should be rejected because there is no admissible record evidence that any information was either confidential or disclosed.  (Dkt. No. 140, Attach. 3; Oral Argument Tr.)

After carefully considering the matter, the Court denies this portion of Defendants' motion for the reasons stated by Plaintiff in its papers and oral argument.

### H.     Defendant King's Counterclaim for Breach of Contract

Generally, Plaintiff argues that this counterclaim should be dismissed for three reasons (Dkt. No. 128, Attach. 1; Oral Argument Tr.)  First, argues Plaintiff, its offer letter of August 30, 2006, to King clearly stated that, "[u]nless previously otherwise discussed, you will . . . be

eligible for the same salary that you currently receive," but it made no mention of King receiving the same "compensation" or "bonuses." (*Id.*) Second, argues Plaintiff, even setting aside the letter's clear language, Defendant King ratified the change to her compensation by remaining in Plaintiff's employ for three years after learning of the new payment structure (in which she received no Net Economic Contribution, or "NEC," payments). (*Id.*) Third, moreover, without objection, King signed a new compensation agreement with Plaintiff on May 18, 2009, which made no mention of NEC payments. (*Id.*)

Generally, Defendant King responds that this counterclaim should not be dismissed for three reasons. (Dkt. No. 133, Attach. 1; Oral Argument Tr.) First, argues Defendant King, through the words "[u]nless previously otherwise discussed," the offer letter expressly contemplated extrinsic discussions in which the parties agreed that King's compensation (including her Total Economic Contribution, or "TEC," payments) would remain the same. (*Id.*) Second, argues Defendant King, Plaintiff's ratification argument fails because of the admissible evidence that (a) King was not aware of any modification to her compensation agreement, and (b) Plaintiff did not adequately advise her of the alleged modification to her compensation package. (*Id.*) Third, argues Defendant King, in any event, Plaintiff should be sanctioned with an adverse inference for spoliating the complete profit-and-loss statements necessary for King to prove her counterclaims (spoliation that has been recognized by United States Magistrate Judge Christian F. Hummel in this proceeding). (*Id.*)

Generally, Plaintiff replies that Defendant King's arguments should be rejected for three reasons. (Dkt. No. 139, Attach. 1; Oral Argument Tr.) First, argues Plaintiff, any reliance on the words "[u]nless previously otherwise discussed" is futile because the words merely modify the

clause "you will . . . be eligible for the same *salary* that you current receive" (meaning the previous discussions could not affect King's "compensation," which is different from her "salary"). (*Id*.) Second, argues Plaintiff, it is undisputed that King was aware of the modification to her compensation agreement. (*Id*.) Third, argues Plaintiff, it has met its discovery obligations in full and, in any event, the profit-and-loss statements are immaterial to its motion for summary judgment (which does not address the issue of damages). (*Id*.)

After carefully considering the matter, the Court denies this portion of Plaintiff's motion for the reasons stated by Defendants in their papers and oral argument. To those reasons, the Court adds three points.

First, in addition to expressly referencing extrinsic evidence (suggesting the agreement is not fully integrated), the letter appears ambiguous, suggesting that the previous discussions could include an agreement to *continue* non-listed terms as well as an agreement to *modify* those non-listed terms.

Second, at the very least, the following facts create a genuine dispute regarding whether Plaintiff was aware, before May 18, 2009, that her compensation had allegedly been modified: (1) the fact that Plaintiff agreed that the terms of King's previous compensation remained in full effect at the time of King's execution of the Offer Letter (Patterson Depo. Tr. at 209-210; Patterson "30(b)(6)" Transcript at 187; King Depo. Tr. at 54); (2) the fact that, in approximately 2007, King continued to request Plaintiff's profit-and-loss statements (King Decl. at ¶¶ 24-25; King Tr. at 65, 67); (3) the fact that, in 2008, King continued to ask about her TEC payments (King Depo. Tr. at 62-63; King Decl. at ¶¶ 26-29); (4) the fact that, in 2008, Acree and Simon told King that the reason she would not receive a TEC payment in 2007 was that the Clifton Park

office branch was not profitable, not that the TEC payments were no longer part of her compensation structure (King Decl. at ¶ 27; King Depo. Tr. at 63-64); and (5) the fact that Acree admitted that it was possible that any adjustment to King's compensation may not have occurred until 2009 (Acree Depo. Tr. at 197).

Third, the Court is persuaded by Plaintiff's argument that this claim should be limited to work performed before May 18, 2009, but will address that issue at trial, through a motion to preclude and/or jury instruction.

## I. Defendant King's Counterclaim for Violation of Article 6 of the New York Labor Law

Generally, Plaintiff argues that this counterclaim should be dismissed for two reasons (Dkt. No. 128, Attach. 1; Oral Argument Tr.) First, argues Plaintiff, because the offer letter of August 30, 2006, modified the terms of King's compensation, she is not entitled to the payment of delinquent wages upon termination. (*Id*.) Second, argues Plaintiff, in any event, incentive compensation is not covered by Article 6 of the New York Labor Law where it is not based on the employee's *individual* performance but his or her *group's* performance; and, here, it is undisputed that the incentive compensation to which King claims entitlement (i.e., the NEC payments) was not based upon her individual performance but upon the annual net profits of her *group*. (*Id*.)

Generally, Defendant King responds that this counterclaim should not be dismissed for two reasons. (Dkt. No. 133, Attach. 1; Oral Argument Tr.) First, argues Defendant King, the critical distinction is not between the performance of the *individual* and the performance of the *group* but between the *nondiscretionary* nature of the payment and the *discretionary* nature of the payment. (*Id*.) Second, argues Defendant King, her TEC compensation was

nondiscretionary in that it was formula-based to compensate her for her *individual* performance in, among other thing, efficiently running the Clifton Park office (King Decl. at ¶¶ 11-12; King Depo. Tr. at 55-56). (Dkt. No. 133, Attach. 1; Oral Argument Tr.)

Generally, Plaintiff replies that Defendant King's arguments should be rejected because incentive compensation is not considered "wages"–and therefore is not covered by Article 6 of the New York Labor Law–where it is not based on the employee's individual performance, but on factors outside the employee's individual work. (Dkt. No. 139, Attach. 1; Oral Argument Tr.)

After carefully considering the matter, the Court denies this portion of Plaintiff's motion for the reasons stated by Defendants in their papers and oral argument. To those reasons, the Court adds two points.

First, the Court agrees with Defendants that the critical distinction under the relevant law is not between the performance of the *individual* and the performance of the *group* but between the *nondiscretionary* nature of the payment and the *discretionary* nature of the payment.

Second, Defendant King has adduced evidence that the payment was nondiscretionary, being equal to a *definite* percentage (15) of the annual profit of a *distinct* office (Clifton Park) of which she was the head, and being intended to compensate her for her *individual* performance in, among other things, efficiently running that office.

**J.      Defendant King's Counterclaim for an Accounting**

Generally, Plaintiff argues that this counterclaim should be dismissed for two reasons (Dkt. No. 128, Attach. 1; Oral Argument Tr.) First, argues Plaintiff, New York law provides for the right to an equitable accounting only where a fiduciary relationship or some other special circumstance exists; and the employer-employee relationship is not a fiduciary relationship

unless there is an agreement by which the employee shares losses (which, here, there is not). (*Id*.)  Second, argues Plaintiff, in the alternative, accounting is an equitable remedy, and there is nothing equitable about rewarding King after she neglected to mention anything about the NEC payments for the final three-plus years of her employment with Plaintiff.  (*Id*.)

Generally, Defendant King responds that this counterclaim should not be dismissed for two reasons.  (Dkt. No. 133, Attach. 1; Oral Argument Tr.)  First, argues Defendant King, New York courts (in cases more factually similar to this one) have not required a showing that the employee be a fiduciary of the employer to be entitled to an accounting, and have instead found that a balance due and owing under the parties' agreement entitled the employee to an accounting.  (*Id*.)  Second, argues Defendant King, because she was not paid her contractually-entitled TEC payments, there are sums due and owing to her by Plaintiff.  (*Id*.)

Generally, Plaintiff replies that Defendant King's arguments should be rejected because the sole case cited by Defendants (a) is a New York Supreme Court case that predates the Appellate Division case cited by Plaintiff, (b) fails to consider whether the employee was a fiduciary of the company, and (c) is not persuasive when contrasted with the overwhelming weight of authority holding that such a relationship is necessary reasons.  (Dkt. No. 139, Attach. 1; Oral Argument Tr.)

After carefully considering the matter, the Court grants this portion of Plaintiff's motion for the reasons stated by Plaintiff in its papers and oral argument.  To those reasons, the Court adds one point: although the right to an accounting may sometimes be premised on a confidential relationship (rather than a fiduciary one), here, that confidential relationship does not appear to have been mutual, nor sufficiently related to King's counterclaims.

**K.     Defendant King's Counterclaims for Unjust Enrichment and Quantum Meruit**

Generally, Plaintiff argues that these two counterclaims should be dismissed for two reasons.  (Dkt. No. 128, Attach. 1; Oral Argument Tr.)  First, argues Plaintiff, the existence of a valid and enforceable written contract governing a particular subject matter precludes recovery on a theory of unjust enrichment or quantum meruit for occurrences or transactions arising out of the same matter, and here it is undisputed that the offer letter (between King and Plaintiff) that Plaintiff allegedly breached is valid and enforceable.  (*Id*.)  Second, argues Plaintiff, in the alternative, King cannot recover on these equitable claims because she has slept on her rights for several years.  (*Id*.)

Generally, Defendant King responds that this counterclaim should not be dismissed because, under New York law, a plaintiff may, in the alternative, proceed on the quasi-contract claims of unjust enrichment or quantum meruit in the event that recovery under its breach of contract claim is unavailable (and here there is a genuine dispute regarding the *scope* of the offer letter).  (Dkt. No. 133, Attach. 1; Oral Argument Tr.)

Generally, Plaintiff replies that Defendant King's arguments should be rejected for two reasons. (Dkt. No. 139, Attach. 1; Oral Argument Tr.)  First, argues Plaintiff, the mere fact that the offer letter may envision incorporating extrinsic evidence regarding the terms of King's employment makes the contract terms no less the subject of dispute; it merely incorporates any such extrinsic evidence into the terms of the contract.  (*Id*.)  Second, argues Plaintiff, because King has alleged the same facts in support of her unjust enrichment claim and quantum meruit claim as her breach-of-contract claim, the claims are duplicative and the quasi contract claim must be dismissed.  (*Id*.)

After carefully considering the matter, the Court grants these two portions of Plaintiff's motion for the reasons stated by Plaintiff in its papers and oral argument. To those reasons, the Court adds one point: although the Court is not persuaded by Plaintiff's argument that King slept on her rights, it is persuaded by Plaintiff's argument that her unjust-enrichment claim and quantum meruit claims are duplicative of her breach-of-contract claim.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 129) is **<u>GRANTED</u> in part** and **<u>DENIED</u> in part**, as set forth above in Part III of this Decision and Order; and it is further

**ORDERED** that Plaintiff's motion for summary judgment (Dkt. No. 128) is **<u>GRANTED</u> in part** and **<u>DENIED in part</u>**, as set forth above in Part III of this Decision and Order; and it is further

**ORDERED** that the following claims are **<u>DISMISSED</u>** from the action:

(1) Plaintiff's claim for misappropriation of trade secrets against Defendants Platinum, King and Young;

(2) Plaintiff's claim for breach of fiduciary duties and duty of loyalty against Defendants King and Young;

(3) Plaintiff's claim for tortious interference with business advantage against Defendants Platinum, King and Young;

(4) Defendant King's counterclaim for an accounting;

(5) Defendant King's counterclaims for unjust enrichment; and

(6) Defendant King's counterclaim for quantum meruit; and it is further

**ORDERED** that the following claims **<u>SURVIVE</u>** the parties' motions for summary judgment:

> (1) Plaintiff's claim for breach of contract against Defendants King and Young;
>
> (2) Plaintiff's claim for aiding and abetting a breach of contract against Defendants Platinum, Giambrone and Gross;
>
> (3) Plaintiff's claim for conversion against Defendants King and Young;
>
> (4) Plaintiff's claim for unjust enrichment against Defendants Platinum, King and Young;
>
> (5) Defendant King's counterclaim for breach of contract; and
>
> (6) Defendant King's counterclaim for violation of Article 6 of the New York Labor Law; and it is further

**ORDERED** that counsel are directed to appear on **MAY 15, 2015 at 2:00 p.m.** in chambers for a pretrial conference, at which counsel are directed to appear with settlement authority, and in the event that the case does not settle, trial will be scheduled at that time. Plaintiff is further directed to forward a written settlement demand to defendants no later than **APRIL 15, 2015**, and the parties are directed to engage in meaningful settlement negotiations prior to the conference. In the event that counsel feel settlement is unlikely, counsel may request to participate via telephone conference for the limited purpose of scheduling a trial date by electronically filing a letter request at least one week prior to the scheduled conference.

Dated: March 30, 2015
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge